IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>RONNIE SEVILLA ANALISTA,<br><br>　　　　　　　Defendant. | CRIMINAL CASE NO. 10-00039<br><br>**REPORT & RECOMMENDATION CONCERNING VIOLATIONS OF SUPERVISED RELEASE CONDITIONS IN A FELONY CASE** |

Pending before the court is a Petition for Offender Under Supervision and supporting declaration and worksheet (collectively, the "Violation Petition"), filed on August 5, 2024, and four[1] Supplemental Declarations filed on September 16 and 27, 2024, October 17, 2024, and November 21, 2024. *See* ECF Nos. 77, 85, 87, 89 and 91. Combined, these filings allege that the Defendant violated his conditions of supervised release by testing positive on drug testing sweat patches worn during the following periods:

1. June 25-30, 2024;
2. July 27-31, 2024;
3. July 31 to August 7, 2024;
4. August 7-14, 2024;
5. August 14-21, 2024;
6. August 21-28, 2024;
7. August 28 to September 4, 2024;
8. September 4-11, 2024;
9. September 11-18, 2024;
10. October 16-23, 2024; and
11. October 23-30, 2024.

---

[1] The probation officer filed a Fifth Supplemental Declaration on November 27, 2024, after the matter had already been taken under submission by the court. *See* ECF No. 92. Additionally, at the hearing held on November 7, 2024, the probation officer orally reported on the positive sweat patch worn during the period October 16-23, 2024, but the lab result for the sweat patch worn from October 23-30, 2024, had not yet been received. Thus, the Defendant has neither admitted or denied the sweat patch result for item #11 above. The Chief Judge can address #11 above and the allegations in the Fifth Supplemental Declaration at the final disposition hearing.

On October 1, 2024, the Defendant admitted to all the allegations in the Violation Petition, the Supplemental Declaration and the Second Supplemental Declaration. *See* Mins., ECF No. 88. On November 7, 2024, the Defendant admitted to the allegations in the Third Supplemental Declaration, and entered a tentative admission to the positive sweat patch result listed as item #10 above. *See* Mins., ECF No. 90. The parties also presented their respective positions on an appropriate sanction for the violations. *Id.* Having heard from the parties, the court now issues this Report and Recommendation.

**BACKGROUND**

**A.    Conviction and Sentence**

On January 17, 2013, the Defendant was sentenced to 120 months' imprisonment, followed by 8 years of supervised release, for the offense of Conspiracy to Distribute Methamphetamine. *See* J., ECF No. 40. Among other conditions of supervised release imposed, the Defendant was ordered to refrain from any unlawful use of a controlled substance, to participate in a substance abuse treatment program, which may include up to eight drug tests a month, and to perform 50 hours of community service. *Id.* at 3-4.

The Defendant commenced his supervised release term on July 24, 2020.

**B.    Post-Conviction Conduct**

On November 3, 2020, the court granted the probation office's request to modify the Defendant's supervised release conditions to include a provision that the Defendant submit to no more than eight drug tests per month pursuant to *United States v. Stephens* and to not attempt to obstruct or tamper with the testing methods. *See* Order, ECF No. 55.

On October 19, 2023, the Defendant's supervised release conditions were modified to include 75 hours of community service as a sanction for admitting to the use of THC on December 8, 9 and 10, 2022, and for his no contest plea to having tested positive for marijuana metabolite on January 16 and 25, 2023.[2] *See* Am. J., ECF No. 74 and R. &. R., ECF No. 71.

---

[2] This was based on the filing of a violation petition and supplemental declaration wherein the probation officer initially sought to revoke the Defendant's supervised release. *See* ECF Nos. 56 and 63.

# CURRENT VIOLATIONS

**A.     Filing of Violation Petition**

On August 5, 2024, the probation officer filed the instant Violation Petition, *see* ECF No. 77, alleging that a sweat patch was worn by the Defendant from June 25-30, 2024, and sent to the lab, with results received on July 15, 2024, which were positive for methamphetamine. On July 25, 2024, the probation officer met with the Defendant to discuss his noncompliance and the lab results. The Defendant denied use of illicit substances.

At the request of the Probation Officer, the court ordered that a summons issue for the Defendant to appear and answer to the allegations. *See* Order, ECF No. 79.

**B.     Initial Appearance and Denial**

On August 13, 2024, the Defendant appeared as summoned, and the court appointed the Federal Public Defender to represent him. *See* Mins., ECF No. 81 and Appointment Order, ECF No. 83. Ms. Kottke asserted the Defendant was being treated differently than others and inquired why a violation petition was filed instead of an informational report. Defendant entered a denial to the allegation and requested an evidentiary hearing. The court ordered Ms. Kottke to file a notice of defense by August 29, 2024, and the court set a continued status hearing for September 19, 2024.

**C.     Filing of Supplemental Declaration**

On September 16, 2024, the probation officer filed a Supplemental Declaration, *see* ECF No. 85, alleging that five sweat patches were applied on and worn by the Defendant between July 27, 2024, through August 28, 2024,[3] and the lab results for said sweat patches all returned as positive for methamphetamine.

**D.     Subsequent Court Hearing**

On September 19, 2024, the Defendant returned to court, and Ms. Lujan asked that the matter be continued until Ms. Kottke returned to Guam so that Ms. Kottke could review the results of the sweat patch tests that were just recently provided to their office. *See* Mins., ECF No. 86. The court

---

[3] The five sweat patches were worn during the period (i) July 27-31, 2024, (ii) July 31-August 7, 2024, (iii) August 7-14, 2024, (iv) August 14-21, 2024, and (v) August 21-28, 2024.

continued the matter to October 1, 2024, and ordered that the Defendant be detained over defense counsel's objections.

**E.      Filing of Second Supplemental Declaration**

On September 27, 2024, the probation officer filed a Second Supplemental Declaration, *see* ECF No. 87, alleging that a sweat patch was applied on the Defendant on August 28, 2024, and removed on September 4, 2024, to be sent to the lab for analysis. Results received on September 25, 2024, revealed that the sweat patch was positive for methamphetamine.

**F.      Admissions to Violations**

On October 1, 2024, the parties appeared in court, and the Defendant entered admissions to all the pending allegations. *See* Mins., ECF No. 88. Defense counsel stated that the Defendant's supervisor was willing to re-employ the Defendant if the court released him and also agreed to modify his work hours to allow him to attend his treatment sessions and some NA meetings. Counsel requested that the Defendant be released because he just purchased a vehicle and needed to work in order to make the payments so the car would not be repossessed. The court agreed to release the Defendant and ordered him to go to treatment. The court also scheduled arguments on disposition for November 7, 2024.

**G.      Filing of Third Supplemental Declaration**

On October 17, 2024, the probation officer filed a Third Supplemental Declaration alleging that the Defendant wore drug testing sweat patches from September 4-11, 2024, and from September 11-18, 2024, and the patches were sent for lab analysis. *See* ECF No. 89. Results received on October 4 and 8, 2024, indicated that the patches were positive for methamphetamine.

**H.      Final Admissions**

On November 7, 2024, the Defendant returned to court, and the probation officer reported that in addition to the allegations in the Third Supplemental Declaration, he would be filing a fourth supplemental declaration because the lab result for the sweat patch worn from October 16-23, 2024, were recently received and were positive for methamphetamine. *See* Mins., ECF No. 90. The Defendant then entered admissions to the allegations in the Third Supplemental Declaration and a tentative admission to the yet-to-be-filed fourth supplemental declaration with the additional positive

sweat patch orally reported by the probation officer. The parties then presented their arguments on an appropriate sanction for the violations, and the court took the matter under submission.

**F.   Filing of Fourth Supplemental Declaration**

On November 21, 2024, the probation officer filed a Fourth Supplemental Declaration, *see* ECF No. 91, alleging that the results of two drug testing sweat patches worn during the periods October 16-23, 2024,[4] and October 23-30, 2024, were received and confirmed a positive result for methamphetamine.

## LEGAL STANDARD

A district court may revoke a term of supervised release only if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). *See also United States v. Lomayaoma*, 86 F.3d 142, 147 (9th Cir. 1996) ("for purposes of a supervised release revocation hearing, the district court need only conclude that a preponderance of the evidence supports" revocation). Revocation is mandatory if a defendant fails to comply with drug testing or tests positive for controlled substances more than three times over the course of one year. *See* 18 U.S.C. § 3583(g)(3) and (4).

## PARTIES' RESPECTIVE POSITIONS AND FACTORS CONSIDERED

The Third Amended Violation Worksheet reflects that the allegations are grade C violations, with a guidelines range of 4-10 months of imprisonment, based on his CHC of II, followed by 86-92 months of supervised release. *See* Third Am. Violation Worksheet, ECF No. 89-2.

This is the Defendant's post-conviction petition proceeding. During the first proceeding, the court imposed 75 hours of community service in lieu of revoking his supervised release term. His underlying offense of conviction was for a Class A felony because of a sentencing enhancement based on a prior drug conviction, which also increased his supervised release term. The maximum sentence the Defendant can serve for a revocation is not more than five years pursuant to 18 U.S.C. § 3583(e)(3).

---

[4] This allegation was already orally reported at the hearing held on November 7, 2024. *See* Mins., ECF No. 90.

Based on the numerous violations, the probation officer recommended a sentence of four months' imprisonment, followed by 92 months of supervised release.

Counsel for the United States expressed her concern about the number of violations the Defendant had for positive sweat patches. She joined in the probation officer's recommended sentence.

Defense counsel stated that the Defendant has been working with Mobil for some time and is hoping to be a manager some day. She asserted that the Defendant is taking accountability for his mistakes and plans to attend the next virtual DORE hearing and to possibly enter the program, which would further assist him with his drug addiction. Ms. Kottke asked that the court impose a split sentence of time served, with the remainder to be served on location monitoring. Counsel argued that this would allow the Defendant to both continue to work and attend treatment. Ms. Kottke noted that the Defendant had the support of his family in his journey to remain sober. The Defendant stated "I just need help."

The court notes that it is up to the Defendant to decide whether he wants to enter the DORE program. He will not be much good as a manager if he remains addicted to methamphetamine. The Defendant's drug use is not just a one time slip-up. Rather, the repeated violations are indicative of a prolonged habit over the course of weeks or months. Only the Defendant can bring a halt to his addiction. The Defendant must remember that he is not alone in the battle. His drug use also affects his family, who continue to support him. Additionally, the Defendant has always had the support of his counsel and his probation officer, along with all the treatment resources this court can provide. If the Defendant really wants to live a drug-free life, he just has to take advantage of the services made available to him and make a serious effort to remain sober. Entering the DORE program with more structured supervision by the court will be a good indicator of whether the Defendant was serious when he asked for help with his addiction.

Having considered the parties' arguments, the court recommends a split sentence[5] of 30 days'

---

[5] *See* USSG § 7B1.3(c)(1)(B) ("Where the minimum term of imprisonment . . . is at least one month but not more than six months, the minimum term may be satisfied by . . . (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community

imprisonment, followed by 92 months of supervised release with a condition that he serve 30 days of home detention. This is the Defendant's first revocation, which merits some leniency, and he has expressed an interest in entering the DORE program. The recommended sentence will allow the Defendant to maintain his employment and to continue with sorely needed drug treatment. The recommended sanction is reasonable and not greater than necessary to address the violations and deter future misconduct.

## RECOMMENDATION BY MAGISTRATE JUDGE

Having considered the above factors, the undersigned recommends the District Judge (1) accept the Defendant's admissions to the violations and (2) revoke the Defendant's supervised release term and (3) impose a sentence of 30 days' imprisonment, with credit for time served,[6] and 92 months of supervised release with the special condition that he serves 30 days of home detention with location monitoring.

A disposition hearing shall be held on December 19, 2024, at 1:30 p.m., unless otherwise rescheduled by the Chief Judge. The court further recommends that the disposition hearing be continued if the Defendant enters the DORE program and during the duration of his participation in the program.

IT IS SO RECOMMENDED.



/s/ Michael J. Bordallo
   U.S. Magistrate Judge
Dated: Dec 04, 2024

### NOTICE

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**

---

confinement or home detention according to the schedule in §5C1.1(e) for any portion of the minimum term.").

[6] The Defendant was detained from September 19, 2024, to October 1, 2024, for a total of 13 days of confinement credit.